UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DON M. ANDREW, JR.                                    CIVIL ACTION

VERSUS                                                 NO. 15-2105

ST. TAMMANY PARISH PRISON ET AL.                      SECTION "I" (2)

## REPORT AND RECOMMENDATION

Plaintiff, Don M. Andrew, Jr., is currently incarcerated at Oakdale Federal Correctional Institution. At the time of the incidents he complains about in this case, Andrew was a prisoner in the St. Tammany Parish Jail. He filed this complaint pro se and in forma pauperis pursuant to 42 U.S.C. § 1983 against St. Tammany Parish Prison[1] and Officer Ty Poynter, who was employed at the St. Tammany Parish Jail. Andrew alleges that he was subjected to excessive force, received constitutionally inadequate medical care and was verbally harassed while incarcerated in the jail. He seeks monetary damages and injunctive relief. Record Doc. No. 5 (Complaint at ¶¶ IV and V).

On December 7, 2015, I conducted a telephone conference in this matter. Participating were plaintiff pro se and Molly Manieri, counsel for defendants. Plaintiff was sworn and testified for all purposes permitted by Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985), and its progeny.

---

[1]Although plaintiff named the St. Tammany Parish "Prison" as a defendant, the correct name of that institution is the St. Tammany Parish "Jail." St. Tammany Parish Sheriff's office website, https://www.stpso.com/divisions/corrections/corrections (visited January 5, 2016).

## THE RECORD

Andrew testified that he was incarcerated in the St. Tammany Parish Jail on charges of conspiracy to commit arson, mail fraud and wire fraud at the time of the incidents about which he complains in this matter.  He stated that he was convicted of these charges in November 2014 and sentenced to 20 years in prison.  He testified that he was held at the St. Tammany Parish Jail from October 12, 2012 to March 19, 2015.  He stated that he arrived at Oakdale Federal Correctional Institution on November 4, 2015, after being in Pollock Federal Correctional Institution.  He said he is 44 years old.

Andrew confirmed that he asserts three claims in this case.[2]  His first claim is that defendant Deputy Poynter used excessive force against him on October 3, 2014.  Andrew testified that, between 9:30 and 10:30 p.m. on that date, he and Poynter "had a dispute" over whether plaintiff could take a shower.  Andrew stated that he had refused to take a shower earlier in the day, but wanted to take one at about 9:30 p.m.  He testified that prisoners were allowed to take a shower anytime between 6:00 a.m. and 11:00 p.m.  He stated that he asked Poynter if he could take a shower, but Poynter replied that Andrew had already taken one.

---

[2]On December 7, 2015, Andrew filed a document entitled "Sworn Affidavit" in this matter. Record Doc. No. 24. However, the facts alleged in this submission have nothing to do with the claims asserted in the instant action and appear instead to be related to another, unrelated case that plaintiff has pending in this court, <u>Don M. Andrew, Jr. v. St. Tammany Parish Prison and Timothy Hooker</u>, Civil Action No. 15-2101"I"(5).

Plaintiff stated that he asked Poynter to check the record book to confirm that Andrew had <u>not</u> taken a shower earlier.  He testified that Poynter cursed at him, said that he did not have to do anything that Andrew asked, and called him "boy."  Andrew testified that Poynter refused his request to let him speak to the deputy's supervisor.

Andrew stated that he was in isolation for protective custody on October 3, 2014, and had to be logged out.  He testified that he was in protective custody because he had a fusion operation on his back in 2005.  He stated that he told St. Tammany Parish Jail personnel about his 2005 surgery when he arrived seven years later on October 12, 2012.  He said he also had a burn on his foot on October 3, 2014, and had been in a bus accident in April 2012.

As to Poynter's use of force, Andrew testified that, after Poynter denied his request to speak to a supervisor, Poynter told him to lie down on his stomach in his cell.  Plaintiff stated that he did so and Poynter handcuffed him behind his back.  Andrew testified that Poynter "pulled me up, hard, knowing that I had a medical condition with my back."  He said that Poynter "yanked me up real hard" by the handcuffs.  Plaintiff testified that he "was screaming and asked [Poynter] could he please be a little gentle with me."  He said that Poynter responded, "You gotta learn how to listen, boy," and used "a few more" curse words "while he was dragging me out the cell and pulling me by the handcuffs.  He was pulling the handcuffs up and hurting my arms and my shoulders."  Andrew stated

that Poynter tried to make him get on his knees when they were in the hallway, "knowing that was something that I can't do."

Plaintiff testified that Poynter's supervisor, Deputy Cassidy, then asked Andrew why he did not just listen to Poynter.  Andrew said he replied that the Medical Department had his "medical credentials" describing what he could and could not do, and that he was in pain.  He stated that he sat on the bench after that for about six hours, in pain.  He stated that Poynter "knew Medical had all my . . . paperwork . . . and he knew I couldn't do that, as far as getting on my knees."

Andrew testified that about one and one-half minutes (90 seconds) elapsed from when Poynter put the handcuffs on him in the cell until Cassidy spoke to him in the hallway.  He stated that, while his hands were cuffed behind his back in the hallway, Poynter "was pulling down on me, telling me to get on my knees, and I was crying. I said you know I can't do that," which is when Cassidy said that Andrew should listen to Poynter.  Plaintiff testified that Poynter "threw me on the bench and they were saying some other vulgarity things to me."

Andrew said that, while he was on his stomach, Poynter pulled on his handcuffs and "raised me like he was trying to make me touch my neck."  Andrew stated that the first incident of pulling on his cuffs to raise him from the bed lasted about 10 seconds. He said that the second pulling incident occurred after Poynter pushed him into the hallway and told him to "get on your knees, boy."  Andrew stated that the second

instance lasted about 45 seconds, when Poynter pulled him up from his knees by his handcuffs.  Asked what injuries he suffered, Andrew testified that he had hand, back and neck pain, for which he is currently being treated with aspirin at Oakdale.

Plaintiff confirmed that his second claim in this case is that he did not receive proper medical care for the injuries he suffered in the same incident.  He stated that Cassidy refused to provide him with medical care and that no one came to see him about his injuries.  He said "they" told him there was nothing in his medical records, but that his St. Tammany Parish Jail medical records show that he told jail personnel on October 10, 2012, about his seven-year-old lumbar fusion and the burn on his foot.

Andrew confirmed that he had reviewed his medical records, Record Doc. No. 18, and that they are accurate.  He claimed that the records confirm that he has a painful back problem.  He said that medical personnel at the St. Tammany Parish Jail had given him x-rays, but no pain medicine.  He confirmed that the records show that he was seen by four different doctors at St. Tammany Parish Jail.

Andrew testified that his third claim is that he was verbally harassed when Poynter cursed him and called him "boy," and when Poynter and Cassidy addressed vulgarities to him.

Plaintiff stated that he filed a grievance at the St. Tammany Parish Jail concerning the incident with Poynter, but did not receive any response.  He said he received a disciplinary citation and a hearing for "failing to follow direct orders, a few other things"

with respect to this incident. He stated that he was found guilty of the disciplinary charge and that his telephone privileges were taken away for a week.

In pertinent part, Andrew's medical records from St. Tammany Parish Jail reveal that his history of a lumbar spine fusion was noted at his initial health assessment on October 12, 2012. Record Doc. No. 18-1 at p. 28. He was seen by S. Bhatt, M.D., on December 5, 2012, for complaints of abdominal and back pain and his request for a double mattress. Id. at p. 54. Dr. Bhatt noted that Andrew exaggerated his symptoms and was in no distress. The doctor prescribed acetaminophen (Tylenol) for back pain. Dr. Bhatt found no medical indication that might necessitate a double mattress. Id. at p. 55.

Andrew submitted a sick call request dated August 21, 2013, complaining that he had fallen on his back during a fight on August 20, 2013, and had tingling in his back down to his toes and pain in his foot. He said he had suffered back pain since his arrival at the jail on October 12, 2012. Andrew reported to Nurse Travis on August 26, 2013, that he had nerve damage from the fall. Nurse Travis observed that plaintiff both ambulated and bent over without difficulty and was in no acute distress. R. Demaree Inglese, M.D., Medical Director of the St. Tammany Parish Sheriff's Office, added a note that he had seen plaintiff in clinic the previous day for a different complaint and that Andrew had walked normally, risen from a seated position without difficulty and not mentioned any back problem. Id. at p. 15.

6

Dr. French saw Andrew on August 28, 2013, for plaintiff's complaint of a "twisting injury" and back pain since an altercation on August 20, 2013.  Dr. French found no signs of acute back injury.  Plaintiff had a normal gait, full range of motion, no spasm, and could bend easily.  Dr. French saw no medical need for the second mattress that Andrew had requested.  The physician prescribed a nonsteroidal anti-inflammatory drug ("NSAID") and analgesic balm for pain.  Id. at p. 47.

On July 9, 2014, plaintiff was seen by Nurse Thomas and Dr. Bhatt for complaints of lower back pain, left leg numbness and left arm tingling after an altercation.  Nurse Thomas observed that plaintiff ambulated without difficulty and easily stepped up onto and sat on the exam table.  Id. at p. 95.  Dr. Bhatt stated that Andrew had "vague reports" of pain and numbness, but had full range of motion and a normal motor and neurological examination.  Dr. Bhatt prescribed NSAIDs for physical discomfort.  Id. at p. 39.

In a sick call request dated August 10, 2014, Andrew complained that his injuries from the July 9, 2014, altercation had worsened and he had shooting pains in his back going down to his toes with numbness and tingling.  He stated that his thumb was swollen and his left shoulder and neck hurt.  He requested a second mattress.  The nurse who responded on August 13, 2014, noted that Andrew ambulated without difficulty.  Plaintiff was scheduled to see a doctor in a few days.  Id. at p. 8.

Dr. Gore examined Andrew on August 18, 2014, for his back and left thumb complaints.  The doctor noted plaintiff's history of a lumbar fusion in 2005.  On physical

7

examination, Andrew had normal range of motion in his back and a negative straight leg raising test. Dr. Gore found plaintiff's complaints of pain difficult to assess because his reported symptoms were "quite exaggerated and don't necessarily follow anatomic patterns." Dr. Gore prescribed NSAIDs and ordered x-rays of Andrew's lumbar spine and left hand. Id. at p. 38. The x-rays were normal. Id. at pp. 148-49.

Dr. Inglese denied plaintiff's sick call request dated August 27, 2014, in which Andrew sought followup for back pain and shooting pain down his left leg. Dr. Inglese noted that Andrew already had a followup appointment set on September 18, 2014, and that it was "too soon to assess med. effectiveness." Id. at p. 7.

On September 16, 2014, Dr. Gore saw Andrew again for complaints of back pain radiating down his left leg and inability to use his hand and thumb since the July 2014 altercation. The doctor found it difficult to assess plaintiff's pain because Andrew exaggerated his history and symptoms and was "fixated on 'getting slammed'" during the altercation. Dr. Gore noted that x-rays of plaintiff's lumbar spine and left hand were negative. He prescribed Mobic[3] for pain and low-dose Neurontin[4] for radicular symptoms, and allowed plaintiff to have a second opinion as he requested. Id. at p. 37.

---

[3]Mobic (generic name: meloxicam) is an NSAID used to treat osteoarthritis and rheumatoid arthritis. PDRhealth (PDR Network, LLC), http://www.pdrhealth.com/drugs/mobic (visited Dec. 18, 2015).

[4]Neurontin (generic name: gabapentin) is used to help relieve certain types of nerve pain. Id., http://www.pdrhealth.com/drugs/neurontin (visited Dec. 18, 2015).

In an undated sick call request, which is located in the medical records between other records dated August 27 and October 4, 2014, Andrew alleged that he had been "pulled up from [his] bed" by Poynter and dragged into the hallway, where he was "slammed" on his chest.  He complained that his back pain was worse and that his knees and neck hurt.  Id. at p. 6.  He testified that the incident with Poynter occurred on October 3, 2014.

Plaintiff saw Dr. French on October 7, 2014, for a second opinion regarding his complaints of back pain and a large paronychia[5] of his left thumb.  Dr. French noted that Andrew had "multiple 'dramatic' [complaints] of back pain," but that he could not pinpoint a location of the pain, only talked about his history of a fusion, and repeatedly blamed Poynter for his back pain and paronychia.  Id. at p. 33.  Dr. French observed that Andrew ambulated, laid down on the exam table and sat up without difficulty, and had full range of motion in his neck and back while the doctor lanced and drained the paronychia.  Id.  Dr. French noted that plaintiff's complaints of pain "became extremely exaggerated" when the physician changed his focus to Andrew's lower back.  Id. at p. 34.  Neurological examination was normal.  Dr. French stated that plaintiff's low back examination was unchanged since his August 28, 2013, examination.  Dr. French concluded that Andrew was malingering for medications.  Id.

---

[5]A "[s]uppurative inflammation of the nail fold surrounding the nail plate . . . due to bacteria or fungi."  Stedmans Medical Dictionary (2014), available on Westlaw at STEDMANS 654380.

Dr. Inglese saw plaintiff on October 13, 2014, in response to Andrew's request for copies of his x-rays.  Dr. Inglese reviewed plaintiff's medical records and wrote a note to his file.  Dr. Inglese stated that Dr. French had evaluated Andrew "extensively" for lower back pain on October 7, 2014, and that the examination was "completely normal." Id. at p. 31.  Dr. Inglese noted that physical examinations for Andrew's complaints of left thumb and back pain by Dr. Gore on August 18 and September 16, 2014, and by Dr. Bhatt on July 9, 2014, were all normal, as were the x-rays taken on August 18, 2014.  Id. at pp. 31-32.  Dr. Inglese commented that plaintiff had a long history of pain complaints that had been unsupported by physical examinations.  Id. at p. 32.  Dr. Inglese also noted that Dr. Bhatt felt that plaintiff had exaggerated his back pain on December 5, 2012, and that Dr. Dileo's evaluation for low back pain on November 30, 2012, was unremarkable. Dr. Inglese stated:  "Three different physicians have eval[uated] Mr. Andrew since his reported incident w/security [in July 2014].  None found any signif[icant] problem with Mr. A.'s thumb or back.  Today, he walks briskly [without] any limp.  He gets into and out of a chair easily."  Dr. Inglese concluded that Andrew had no significant problem that required medical intervention.  Id.

Plaintiff submitted a sick call request dated November 12, 2014, for back, neck and thumb pain and headaches, and requested an MRI of his neck.  Dr. Inglese refused the sick call request, stating:  "Four physicians have seen Mr. Andrew for his thumb and back pain complaints.  No further [work-up] indicated."  Id. at p. 4.

10

## ANALYSIS

I.   SCREENING STANDARDS OF REVIEW

A prisoner's pro se complaint for alleged civil rights violations must be screened by the court as soon as practicable after docketing, regardless whether it has also been filed in forma pauperis.  28 U.S.C. § 1915A(a); Lewis v. Estes, 242 F.3d 375, 2000 WL 1673382, at *1 (8th Cir. 2006); Shakur v. Selsky, 391 F.3d 106, 112 (2d Cir. 2004); Martin v. Scott, 156 F.3d 578, 579-80 (5th Cir. 1998).  Such complaints by prisoners must be dismissed upon review if they are frivolous or fail to state a claim upon which relief can be granted.  28 U.S.C. § 1915A(b)(1); Shakur, 391 F.3d at 113; Carr v. Dvorin, 171 F.3d 115, 116 (2d Cir. 1999).

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'"  Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended).  A complaint is frivolous "if it lacks an arguable basis in law or fact."  Davis v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998); Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994).  The law "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'"  Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

The purpose of a <u>Spears</u> hearing is to dig beneath the conclusional allegations of a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims.  <u>Spears</u>, 766 F.2d at 180.  "[T]he <u>Spears</u> procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners." <u>Davis</u>, 157 F.3d at 1005. The information elicited at such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e).  <u>Wilson v. Barrientos</u>, 926 F.2d 480, 481 (5th Cir. 1991); <u>Adams v. Hansen</u>, 906 F.2d 192, 194 (5th Cir. 1990).  "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists."  <u>Spears</u>, 766 F.2d at 182.

The court may make only limited credibility determinations in a <u>Spears</u> hearing, <u>Norton v. Dimazana</u>, 122 F.3d 286, 292 (5th Cir. 1997) (citing <u>Cay v. Estelle</u>, 789 F.2d 318, 326-27 (5th Cir. 1986), <u>overruled on other grounds by Denton v. Hernandez</u>, 504 U.S. 25 (1992)), and may consider and rely upon documents as additional evidence, as long as they are properly identified, authentic and reliable.  "The Court should allow proper cross-examination and should require that the parties properly identify and authenticate documents.  A defendant may not use medical records to refute a plaintiff's testimony at a <u>Spears</u> hearing." <u>Id.</u> (citing <u>Wilson</u>, 926 F.2d at 482-83; <u>Williams v. Luna</u>, 909 F.2d 121, 124 (5th Cir. 1990)).  However, "'[m]edical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate

indifference.'"  Gobert v. Caldwell, 463 F.3d 339, 347 n.24 (5th Cir. 2006) (quoting

Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995)) (internal citations omitted).

After a Spears hearing, the complaint may be dismissed as legally frivolous if it

lacks an arguable basis in law, Jackson v. Vannoy, 49 F.3d 175, 176-77 (5th Cir. 1995);

Moore v. Mabus, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the

facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the

irrational or wholly incredible."  Id. at 270.

"'A complaint lacks an arguable basis in law if it is based on an indisputably

meritless legal theory, such as if the complaint alleges the violation of a legal interest

which clearly does not exist.'"  Davis, 157 F.3d at 1005 (quoting McCormick v. Stalder,

105 F.3d 1059, 1061 (5th Cir. 1997)).  "When a complaint raises an arguable question

of law which the district court ultimately finds is correctly resolved against the plaintiff,

dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section

1915(d) standard is not."  Moore, 976 F.2d at 269.  A prisoner's in forma pauperis

complaint which fails to state a claim may be dismissed sua sponte at any time under 28

U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

In this case, plaintiff's complaint should be dismissed under 28 U.S.C. § 1915(e)

and 42 U.S.C. § 1997e(c)(1), either as frivolous because they lack an arguable basis in

law, or under Rule 12(b)(6) in light of his testimony explaining the factual basis of his

claims.  Even under the broadest reading,[6] plaintiff fails to state a cognizable cause of action under Section 1983 that his constitutional rights were violated.

II.     EVALUATION OF PLAINTIFF'S CLAIMS

(A)     Excessive Force Claim

According to his testimony, Andrew was incarcerated in the St. Tammany Parish Jail on charges of conspiracy to commit arson, mail fraud and wire fraud for which he had not yet been convicted at the time of the incident of which he complains.  Thus, his claim as a pretrial detainee that Deputy Poynter used excessive force against him is properly characterized as asserting a violation of his substantive due process rights under the Fourteenth Amendment.  Petta v. Rivera, 143 F.3d 895, 911 (5th Cir. 1998) ("[W]here a plaintiff's excessive force claim, whether he be a prisoner, arrestee, detainee, or an innocent bystander of tender years, falls outside the specific protections of the Bill of Rights, that plaintiff may still seek redress under the due process clause of the Fourteenth Amendment.") (citing Graham v. Connor, 490 U.S. 386, 395 n.10 (1989)); accord  Kitchen v. Dallas Cnty., 759 F.3d 468, 479 (5th Cir. 2014) (citing Valencia v. Wiggins, 981 F.2d 1440, 1446 (5th Cir. 1993)).

---

[6]The court must "liberally construe briefs of pro se litigants and apply less stringent standards to parties proceeding pro se than to parties represented by counsel," Smith v. Lonestar Constr., Inc., 452 F. App'x 475, 476 (5th Cir. 2011) (quotation omitted); Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994), and I have done so in this case.

Under the Fourteenth Amendment standard, the Fifth Circuit has long held that

where a pretrial detainee is allegedly the victim of a detention officer's use of excessive force, as explained in <u>Valencia v. Wiggins</u>, 981 F.2d 1440, 1446 (5th Cir. 1993), . . . such a claim is subject to the same analysis as a convicted prisoner's claim for use of excessive force under the Eighth Amendment. Accordingly, as set forth in <u>Hudson v. McMillian</u>, 503 U.S. 1, 6 . . . (1992) (quoting <u>Whitley v. Albers</u>, 475 U.S. 312, 320-21 . . . (1986)), a constitutional violation occurs where a detention <u>officer uses force "'maliciously and sadistically for the very purpose of causing harm'" to the pretrial detainee, rather than in "'a good faith effort to maintain or restore discipline.'"</u>
. . . .
     [The Supreme Court in <u>Hudson</u>, 503 U.S. at 7] . . . instructs courts to consider a number of factors when evaluating an excessive force claim. These factors include "the extent of injury suffered," "the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'"

<u>Id.</u> at 477 (footnotes omitted) (emphasis added).

However, in <u>Kingsley v. Hendrickson</u>, 135 S. Ct. 2466 (2015), the United States

Supreme Court recently resolved a circuit split (without mentioning on which side of the

split the Fifth Circuit's decisions fell), and clarified the standard for excessive force

claims brought under the Fourteenth Amendment, as follows.

The Supreme Court concluded that with respect to a Fourteenth Amendment excessive force claim, a pretrial detainee need show only that the use of force was "<u>objectively</u> unreasonable." <u>Kingsley v. Hendrickson</u>, 135 S. Ct. 2466, 2470 (2015). In doing so, the Supreme Court expressly rejected a <u>subjective</u> standard, explaining:
     [Defendants] believe that the relevant legal standard should be subjective, <u>i.e.</u>, that the plaintiff must prove that the use of **force was not "applied in a good-faith effort to maintain or restore discipline" but, rather, was applied**

"**maliciously and sadistically to cause harm**." . . . And they refer to several cases that they believe support their position. . . . (citing <u>Whitley v. Albers</u>, 475 U.S. 312 . . . (1986); <u>Hudson v. McMillian</u>, 503 U.S. 1, . . . (1992); [<u>Cnty. of Sacramento v.</u>] <u>Lewis</u>, 523 U.S. 833 . . . [1997]; <u>Johnson v. Glick</u>, 481 F.2d 1028 (C.A.2 1973)).

The first two of these cases, however, concern excessive force claims brought by convicted prisoners under the Eighth Amendment's Cruel and Unusual Punishment Clause, not claims brought by pretrial detainees under the Fourteenth Amendment's Due Process Clause. <u>Whitley</u>, <u>supra</u> at 320, 106 S. Ct. 1078; <u>Hudson</u>, <u>supra</u>, at 6-7, 112 S. Ct. 995. The language of the two Clauses differs, and the nature of the claims often differs. And, most importantly, pretrial detainees (unlike convicted prisoners) cannot be punished at all, much less "maliciously and sadistically." <u>Ingraham v. Wright</u>, 430 U.S. 651, 671-672, n.40 . . . (1977); <u>Graham</u>, 490 U.S. at 395, n.10, . . . . Thus, there is no need here, as there might be in an Eighth Amendment case, to determine when punishment is unconstitutional. <u>*Whitley* and *Hudson* are relevant here only insofar as they address the practical importance of taking into account the legitimate safety-related concerns of those who run jails.</u>

<u>Kingsley</u>, 135 S. Ct. at 2475 ([underlined] emphasis added).

<u>Brown v. Gusman</u>, No. 15-1491-DEK, 2015 WL 6827260, at \*3-4 (E.D. La. Nov. 6, 2015) (Knowles, M.J.) (bold emphasis added); <u>see also</u> <u>Young v. Wolfe</u>, No. 13-56438, 2015 WL 7280702, at \*1 (9th Cir. Nov. 18, 2015) (remanding for new trial because trial court's jury instruction had required plaintiff to prove that "defendants acted maliciously and sadistically for the purpose of causing harm. As the Supreme Court later clarified in <u>Kingsley</u> . . . , however, the appropriate standard for evaluating the use of excessive force against a post-arraignment, pre-trial prisoner . . . is objective unreasonableness.").

In <u>Kingsley</u>, the Supreme Court overruled the Seventh Circuit's decision below and abrogated <u>Murray v. Johnson No. 260</u>, 367 F. App'x 196, 198 (2d Cir. 2010), and <u>Bozeman v. Orum</u>, 422 F.3d 1265, 1271 (11th Cir. 2005),[7] all of which had used a subjective standard like the one used by the Fifth Circuit in <u>Valencia</u> and its progeny. Under the clarified <u>Kingsley</u> standard, "a pretrial detainee can prevail by providing only objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective <u>or</u> that it is excessive in relation to that purpose." <u>Kingsley</u>, 135 S. Ct. at 2473-74 (citing <u>United States v. Salerno</u>, 481 U.S. 739, 747 (1987); <u>Block v. Rutherford</u>, 468 U.S. 576, 585-86 (1984); <u>Schall v. Martin</u>, 467 U.S. 253, 269-71 (1984); <u>Bell v. Wolfish</u>, 441 U.S. 520, 561 (1979)) (emphasis added).

Although the <u>Kingsley</u> Court used the emphasized disjunctive "or" in the sentence quoted above, all of the decisions that it cited and quoted in support of this statement used the conjunctive "and." In <u>Thompson v. Beasley</u>, 309 F.R.D. 236 (N.D. Miss. 2015), District Judge Brown framed the post-<u>Kingsley</u> inquiry as "whether, from an objective point of view, [defendant's] actions were rationally related to a legitimate, nonpunitive governmental purpose <u>and</u> whether his actions were excessive in relation to that purpose." <u>Id.</u> at 247 (citing <u>Kingsley</u>, 135 S. Ct. at 2473-74) (emphasis added). That

_____

[7]<u>See, e.g.</u>, <u>Murray</u>, 367 F. App'x at 198 (citing <u>Hudson</u>, 503 U.S. at 7-8) (quotation and additional citation omitted) ("[O]ne subjective and one objective condition must be satisfied to establish an excessive force claim.  The subjective condition is satisfied by showing that the defendant had a sufficiently culpable state of mind–the core inquiry being whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.").

appears to be a permissible interpretation, based on the uniform use of the conjunctive

"and" in the prior decisions cited by <u>Kingsley</u>; the Supreme Court's reiteration of the

factors that a court may consider in determining the reasonableness of the force used,

<u>Kingsley</u>, 135 S. Ct. at 2473; and the Court's statements regarding the importance of

> judg[ing] the reasonableness of the force used from the perspective and
> with the knowledge of the defendant officer.  We have also explained that
> a court must take account of the legitimate interests in managing a jail,
> acknowledging as part of the objective reasonableness analysis that
> deference to policies and practices needed to maintain order and
> institutional security is appropriate.

<u>Id.</u> at 2474.

As Magistrate Judge Knowles of this court concluded several weeks ago and my

own research to date has confirmed, neither the Fifth Circuit nor any other federal court

in Louisiana has cited <u>Kingsley</u>, "much less discuss[ed] its ultimate impact on this

Circuit's precedents."  <u>Brown</u>, 2015 WL 6827260, at *4.  However, Judge Brown in the

Northern District of Mississippi concluded that, although the Supreme Court in <u>Kingsley</u>

did not mention any Fifth Circuit cases in its listing of decisions on the two sides of the

circuit split, the Court "overruled the <u>Kitchen</u> and <u>Valencia</u> line of cases," which required

proof of malicious and sadistic intent, holding instead "that Plaintiff's Fourteenth

Amendment [excessive force] claim must be evaluated under an objective standard."

<u>Thompson</u>, 309 F.R.D. at 247; <u>accord</u> <u>Hartman v. Walker</u>, No. 1:13-CV-355, 2015 WL

5470261, at *28 (E.D. Tex. Sept. 16, 2015).

18

Magistrate Judge Knowles found the reasoning in <u>Thompson</u> persuasive.  He adopted the standard for Fourteenth Amendment excessive force claims set forth in <u>Kingsley</u> and applied the <u>Hudson</u> factors, rather than the <u>Valencia</u> standard of whether force was used maliciously and sadistically for the purpose of causing harm to a pretrial detainee.  <u>Brown</u>, 2015 WL 6827260, at *5.  As Magistrate Judge Knowles concluded:

> [W]hatever the ultimate impact of <u>Kingsley</u> may be on this Circuit's traditional analysis, one thing is clear:  the foregoing <u>Hudson</u> factors still play a role in a court's analysis of a Fourteenth Amendment excessive force claim.  This is apparent from the fact that the <u>Kingsley</u> court referenced similar factors to be considered in resolving the objective reasonableness of an action on which a Fourteenth Amendment claim is based:
>
>> Considerations such as the following may bear on the reasonableness or unreasonableness of the force used:  the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.  <u>See, e.g.</u>, <u>Graham</u>, <u>supra</u>, at 396, 109 S. Ct. 1865.  We do not consider this list to be exclusive.  We mention these factors only to illustrate the types of objective circumstances potentially relevant to a determination of excessive force.

<u>Brown</u>, 2015 WL 6827260, at *4 (quoting <u>Kingsley</u>, 135 S. Ct. at 2473) (citing <u>Thompson</u>, 309 F.R.D. at 247).  Therefore, this court applies the <u>Kingsley</u> objective reasonableness standard to Andrew's claims.

The Eighth Circuit Court of Appeals has held that <u>Kingsley</u>, which deals with Fourteenth Amendment excessive force claims, confirmed the Eighth Circuit's

longstanding objective reasonableness standard for excessive force claims brought

pursuant to the Fourth Amendment.  This standard includes consideration of the severity

of plaintiff's alleged injury.

> Our prior cases acknowledging that "some minimum level of injury" <u>may</u>
> be required to prove a Fourth Amendment excessive force claim concluded
> that "the necessary level of injury is actual injury."  <u>Dawkins v. Graham</u>,
> 50 F.3d 532, 535 (8th Cir. 1995); <u>accord</u> <u>Lambert v. City of Dumas</u>, 187
> F.3d 931, 936 (8th Cir. 1999).  Other cases noted, consistent with the
> proper standard as clarified in <u>Kingsley</u>, 135 S. Ct. at 2473-75, that the
> infliction of only <u>de minimis</u> injuries "supports the conclusion that [the
> officer] did not use excessive force."  <u>Wertish</u>, 433 F.3d at 1067; <u>accord</u>
> <u>Copeland v. Locke</u>, 613 F.3d 875, 881 (8th Cir. 2010); <u>Cook v. City of
> Bella Villa</u>, 582 F.3d 840, 850 (8th Cir.2009); <u>cf.</u> <u>Wilkins v. Gaddy</u>, 559
> U.S. 34, 36-38 . . . (2010) (same principle applies to Eighth Amendment
> excessive force claims).

<u>Davis v. White</u>, 794 F.3d 1008, 1012 (8th Cir. 2015).  The Eighth Circuit previously

established the similar rule that "a <u>de minimis</u> quantum of force is not actionable under

the Due Process Clause" of the Fourteenth Amendment.  <u>Jackson v. Buckman</u>, 756 F.3d

1060, 1067 (8th Cir. 2014) (citing <u>Bell</u>, 441 U.S. at 539 n.21).

The Fifth Circuit has also held that "'extent of injury is one factor' to be

considered [along] with 'the need for application of force, the relationship between that

need and the amount of force used' and other factors, . . . [but] the extent of injury is only

one relevant factor and cannot be exclusively determinative under the . . . substantive due

process approach."  <u>Petta</u>, 143 F.3d at 902 (quoting <u>Hudson</u>, 503 U.S. at 7).

In the separate context of allegations that a prison guard violated the <u>Eighth</u> Amendment by using excessive force against an already convicted plaintiff inmate, the Supreme Court "has held that 'the use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury.'" <u>Wilkins</u>, 130 S. Ct. at 1176 (quoting <u>Hudson</u>, 503 U.S. at 4). The Supreme Court in <u>Wilkins</u> confirmed that the standards it had established in <u>Hudson</u> remain the law and that

> the extent of injury suffered by an inmate is one factor that may suggest whether the use of force could plausibly have been thought necessary in a particular situation. The extent of injury may also provide some indication of the amount of force applied. As we stated in <u>Hudson</u>, not every malevolent touch by a prison guard gives rise to a federal cause of action. The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition <u>de minimis</u> uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind. An inmate who complains of a push or shove that causes no discernible injury almost certainly fails to state a valid excessive force claim.

<u>Id.</u> at 1178 (quotations and citations omitted).

The Eighth Circuit has stated that the Supreme Court in <u>Wilkins</u> "left open the possibility of dismissal where the <u>injury conclusively shows</u> that the force applied was not unconstitutional." <u>Williams v. Jackson</u>, 600 F.3d 1007, 1012 (8th Cir. 2010) (citing <u>Wilkins</u>, 130 S. Ct. at 1180) (emphasis added). <u>Wilkins</u> confirmed that <u>Hudson</u> remains the touchstone for evaluating claims under the Eighth Amendment. Thus, the Fifth

Circuit's prior cases that relied on <u>Hudson</u> continue to provide binding legal standards for this court in applying the <u>Kingsley</u> standard to Fourteenth Amendment claims.

Andrew's written submissions and testimony fail to establish a Fourteenth Amendment violation. His testimony establishes that he was engaged in a dispute with Poynter over prison regulations as applied to Andrew, that Poynter told him that he needed to learn how to listen, and that plaintiff was charged and convicted in a subsequent disciplinary hearing of "failing to follow orders, a few other things," all of which indicate that Andrew, at a minimum, was not complying with Poynter's directives. Thus, Poynter's actions in restraining plaintiff and moving him to a more restrictive area were rationally related to a legitimate, nonpunitive governmental purpose of maintaining order and discipline.

The question therefore becomes whether Poynter's actions were excessive in relation to that purpose. <u>Thompson</u>, 309 F.R.D. at 247 (citing <u>Kingsley</u>, 135 S. Ct. at 2473-74). Considerations such as the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting bear on the reasonableness or unreasonableness of the force used. <u>Kingsley</u>, 135 S. Ct. at 2473; <u>accord</u> <u>Hudson</u>, 503 U.S. at 7.

22

Andrew testified that the entire incident with Poynter lasted about one and one-half minutes, with the first instance of Poynter pulling on plaintiff's handcuffs to raise him from the bed lasting only 10 seconds and the second instance when Poynter pulled Andrew up from his knees by his handcuffs lasting about 45 seconds.  This was a limited and minimal use of force that resulted in <u>no</u> injuries, as confirmed by plaintiff's medical records, which he verified under oath are accurate.  The records of plaintiff's examination by Dr. French on October 7, 2014, and his visit with Dr. Inglese on October 13, 2014, indicate that he had no injuries to his back or hand following the incident with Poynter.  <u>See</u> <u>Thompson</u>, 309 F.R.D. at 247-48 (Plaintiff suffered a "minor cut" in altercation with prison officer, with no other injury as a result of the use of force.  "This only injury of record weighs against a finding of excess force."); <u>Renthrope v. Toffton</u>, No. 05-1390, 2007 WL 37999, at *5 n. 6 (W.D. La. Jan. 4, 2007) ("the absence of any sign of injury other than a minor cut" weighed in favor of officer under <u>Hudson</u>).

"As for the need for the application of force, it is clear that the use of force is permissible in a variety of situations, not only when it is necessary to protect oneself from an imminent physical attack by an inmate.  For example, the use of force is also appropriate when necessary to control a 'recalcitrant inmate.'" <u>Brown</u>, 15-1491-DEK, 2015 WL 6827260, at *5 (citing <u>Jones v. Shields</u>, 207 F.3d 491, 496 (8th Cir. 2000); <u>Williams v. Benjamin</u>, 77 F.3d 756, 763 (4th Cir. 1996); <u>Soto v. Dickey</u>, 744 F.2d 1260, 1267 (7th Cir. 1980)).  In the circumstances of his dispute with Poynter, Andrew's

conduct could reasonably have been perceived by the deputy as recalcitrance, causing a need to apply force.  Poynter reasonably perceived plaintiff's behavior as a threat to prison control, discipline or security, and the limited amount and duration of force that he used in response was not unreasonable.  Andrew's testimony about his dispute with Poynter and his subsequent disciplinary conviction establishes that his conduct was disruptive, disobedient to reasonable orders and threatening to prison order and security. His refusal to follow Poynter's orders regarding taking a shower and getting down on his knees posed a threat to jailhouse discipline requiring a response.

Applying the foregoing standards, I find that Andrew was not subjected to an unconstitutionally excessive use of force.  It is clear from his own testimony that he was subjected to a minor, one-time use of force by Poynter.  The deputy's conduct was very brief and caused plaintiff no physical injuries.  In these circumstances, the de minimis nature of plaintiff's physical injury, along with his testimony about the very brief extent of Poynter's contact with him, suggests that the force applied was also de minimis and not of constitutional magnitude.  See Jackson, 756 F.3d at 1068 (Pretrial detainee failed to show excessive force when defendant's "karate hit" to detainee's nose "did not cause any objectively verifiable injury.  [Detainee's] nose did not bleed from the blow nor did it leave a bruise, a cut, or even a scratch on his nose."); Smith v. Givens, No. 09-0448-CG-M, 2010 WL 1780409, at *7-8 (S.D. Ala. Apr. 8, 2010), report & recommendation adopted, 2010 WL 1780407 (S.D. Ala. Apr. 30, 2010) (Superficial abrasion, small

scratch, hematoma and superficial laceration, which required no treatment and had no lasting effects, were de minimis injuries that failed to support plaintiff's excessive force claim.); Johnson v. Hamill, No. 6:09cv248, 2010 WL 1189497, at *4-5 (E.D. Tex. Mar. 23, 2010) (citing Wilburn v. Shane, 193 F.3d 517, 1999 WL 706141, at *1 (5th Cir. 1999); Siglar v. Hightower, 112 F.3d 191, 193 (5th Cir. 1997); Grimes v. Texas Dep't of Mental Health & Mental Retardation, 102 F.3d 137, 139-40 (5th Cir. 1996); Wesson v. Oglesby, 910 F.2d 278, 281-82 (5th Cir. 1990)) (Although plaintiff complained of severe back pain after an alleged beating, a medical examination six hours later detected no objective symptoms of back problems and revealed only a small abrasion.  "The Fifth Circuit has held that where the objective factors of an inmate's medical records show no evidence of any injuries consistent with the inmate's allegations, the Court may conclude that the allegations are implausible. . . .  [Plaintiff's] general and conclusory allegations that he suffered an unspecified back injury, which alleged injury was not discernible to medical professionals, are not sufficient to show that he suffered anything more than a de minimis injury" that was inconsistent with the use of excessive force.); McDowell v. Wilkinson Cnty. Corr. Facility, No. 5:08cv279-DCB-MTP, 2008 WL 5169632, at *5 (S.D. Miss. Dec. 3, 2008) (citing Copeland, 2001 WL 274738, at *2) (Officer's "slapping" of inmate after inmate refused to comply with officer's order to strip during cell inspection "was a de minimis use of physical force, as Plaintiff did not report any lasting injury, and does not constitute an Eighth Amendment violation."); McCullough

25

v. Quarterman, No. H-06-3974, 2008 WL 5061512, at *9 (S.D. Tex. Nov. 24, 2009)
(Inmate's slightly swollen face and four scratches, which were documented by medical
examination immediately after the allegedly excessive use of force and for which no
treatment was needed, were de minimis injuries insufficient to establish a constitutional
violation).

Cases in which federal courts have found that a prisoner stated a claim for
excessive force based on an officer's yanking or pulling on plaintiff's handcuffed arms
are distinguishable and not applicable here because those cases involved more severe
applications of force and more serious injuries.  See, e.g., Fennell v. Quintela, 393 F.
App'x 150, 152, 156 (5th Cir. 2010) (Inmate alleged that one prison officer slammed him
against a wall and injured plaintiff's shoulder and that another officer ordered plaintiff
to place his arms through the food tray slot so she could remove his handcuffs, but "she
grabbed his wrists and twisted  them, which resulted in an injury to Fennell's wrist and
further injury to his shoulder."); Morris v. Trevino, 301 F. App'x 310, 313 (5th Cir.
2008) (internal quotation omitted) (Plaintiff alleged that defendant "twisted his arms into
painful positions while his hands were handcuffed behind his back, yanked his hands
through the tray slot opening of his cell, beat and punched on his arms, and punched him
in the face," with resulting "scratches, deep cuts on his arms, bruises, swelling,
permanent scarring, mental anguish, and headaches and general pain."); Ryals v. El Paso
Cnty., No. EP-13-CV-289-PRM, 2015 WL 3540951, at *2, *5 & nn. 9-10 (W.D. Tex.

26

June 3, 2015) (Plaintiff alleged that defendants repeatedly slammed him against a wall and a bench, twisted his handcuffs, punched and kicked him while he was in handcuffs and yanked him up by his handcuffs, "causing significant cuts, swelling and bruising to Plaintiff's wrists;" "abrasions, bruising, and a laceration to his head;" and "long term or permanent nerve damage to his hands and wrists and chronic back pain."); Thomas v. City of Galveston, 800 F. Supp. 2d 826, 830 (S.D. Tex. 2011) (Plaintiff stated a claim for excessive force under the Fourth Amendment when he alleged that, while he was handcuffed face-down on the ground, officers kicked him in the shoulders, back and head; an officer grabbed the handcuffs and picked plaintiff up from the ground, lifting the weight of his body by the cuffs; and the handcuffs tore into his wrists, breaking the skin and causing severe damage to the wrist joint.).

Thus, under the circumstances described in plaintiff's own written submissions and testimony and in his verified medical records, plaintiff's excessive force claim is legally frivolous and fails to state a claim upon which relief can be granted.

(B)   Medical Care

Andrew claims that he did not receive proper medical care for the injuries he suffered in the incident with Deputy Poynter.  He was a pretrial detainee at all relevant times about which he complains.

Before the Fifth Circuit's decision in Hare v. City of Corinth, 74 F.3d 633 (5th Cir. 1996), it appeared that prison officials must provide pretrial detainees with reasonable

medical care unless the failure to provide it was reasonably related to a legitimate government interest.  Bell v. Wolfish,  441 U.S. 520, 539 (1979); Cupit v. Jones, 835 F.2d 82, 85 (5th Cir. 1987); Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992).  The inquiry was "whether the denial of medical care . . . was objectively reasonable in light of the Fourteenth Amendment's guarantee of reasonable medical care and prohibition on punishment of pretrial detainees."  Pfannstiel v. City of Marion, 918 F.2d 1178, 1186 (5th Cir. 1990), abrogated on other grounds as recognized in Martin v. Thomas, 973 F.2d 449, 455 (5th Cir. 1992).

In Hare, however, the Fifth Circuit held:

(1) that the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement; and (2) that a state jail official's liability for episodic acts or omissions cannot attach unless the official had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk.

Hare, 74 F.3d at 650. The Fifth Circuit explained that for the Bell "reasonable relationship" test to be applicable, the pretrial detainee must be able to show that a prison official's act either "implement[s] a rule or restriction or otherwise demonstrate[s] the existence of an identifiable intended condition or practice" or that the "official's acts or omissions were sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by other officials, to prove an intended condition or practice." Id. at 645.  If the pretrial detainee is unable to prove either, the incident will be considered

to be an episodic act or omission and the deliberate indifference standard enunciated in Estelle v. Gamble, 429 U.S. 97, 104 (1976), will apply.  Shepherd v. Dallas Cnty., 591 F.3d 445, 452 (5th Cir. 2009) (citing Bell, 441 U.S. at 539; Scott v. Moore, 114 F.3d 51, 53 (5th Cir. 1997); Hare, 74 F.3d at 649); Tamez v. Manthey, 589 F.3d 764, 769-70 (5th Cir. 2009) (citing Scott, 114 F.3d at 53; Hare, 74 F.3d at 649).

In Estelle, the Supreme Court held that a convicted prisoner may succeed on a claim for damages under 42 U.S.C. § 1983 for inadequate medical care only if he demonstrates that there has been "deliberate indifference to serious medical needs" by prison officials or other state actors.  Only deliberate indifference, "an unnecessary and wanton infliction of pain . . . or acts repugnant to the conscience of mankind," constitutes conduct proscribed by the Eighth Amendment.  Id. at 105-06; accord Gregg v. Georgia, 428 U.S. 153, 182-83 (1976); Tamez, 589 F.3d at 770; Hare, 74 F.3d at 650.  "Deliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and [he] disregards that risk by failing to take reasonable measures to abate it."  Farmer v. Brennan, 511 U.S. 825, 847 (1994).  The Farmer definition applies to Eighth Amendment medical claims.  Reeves, 27 F.3d at 176.

An inmate must satisfy two requirements to demonstrate that a prison official has violated the Eighth Amendment.  If the court finds that one of the components of the test is not met, it need not address the other component.  Davis, 157 F.3d at 1005.  "First, the deprivation alleged must be, objectively, 'sufficiently serious'; a prison official's act or

omission must result in the denial of the minimal civilized measure of life's necessities." Farmer, 511 U.S. at 834 (quotation omitted). Thus, plaintiff must show that defendants "exhibited deliberate indifference to his serious medical needs." Cooper v. Johnson, 353 F. App'x 965, 967 (5th Cir. 2009) (citing Wilson v. Seiter, 501 U.S. 294, 297 (1991)); accord Harris v. Hegmann, 198 F.3d 153, 159 (5th Cir. 1999); Mendoza v. Lynaugh, 989 F.2d 191, 193 (5th Cir. 1993).

Further, plaintiff must establish that the defendant possessed a culpable state of mind. Farmer, 511 U.S. at 838 (citing Wilson, 501 U.S. at 298). A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837; accord Tamez, 589 F.3d at 770 (citing Thompson v. Upshur County, 245 F.3d 447, 458-59 (5th Cir. 2001)). "Such a showing requires the inmate to allege that prison officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" Brewster v. Dretke, 587 F.3d 764, 770 (5th Cir. 2009) (quoting Domino v. Tex, Dep't of Crim. Justice, 239 F.3d 752, 756 (5th Cir. 2001)) (emphasis added).

The Supreme Court has recently reaffirmed that "deliberate indifference"

> is a <u>stringent</u> standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. . . .  The "deliberate indifference" standard permits courts to separate omissions that "amount to an intentional choice" from those that are merely "unintentionally negligent oversight[s]."

<u>Southard v. Tex. Bd. of Crim. Justice</u>, 114 F.3d 539, 551 (5th Cir. 1997) (quoting <u>Bd. of County Comm'rs v. Brown</u>, 520 U.S. 397, 410 (1997) (other quotations omitted)) (emphasis added); <u>accord</u> <u>Tamez</u>, 589 F.3d at 770.  "'Subjective recklessness,'" as used in the criminal law, is the appropriate test for deliberate indifference."  <u>Norton v. Dimazana</u>, 122 F.3d 286, 291 (5th Cir. 1997).

In the instant case, plaintiff's pleadings, as expanded by his testimony, establish that nothing more than episodic acts or omissions as defined in <u>Hare</u> are at issue.  <u>See</u> <u>Tamez</u>, 589 F.3d at 770 (defendants' alleged refusal "to provide [prisoner] with immediate medical treatment qualifies as an 'episodic act or omission'").  Therefore, the "deliberate indifference" standard applies and Andrew must allege facts sufficient to establish that defendants knew he faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it.  In this case, plaintiff wholly fails to allege facts sufficient to satisfy any of the essential elements of his claim, including especially the stringent "deliberate indifference" standard.

Initially, it cannot be concluded that the ailments and injuries Andrew described allegedly resulting from his encounter with Deputy Poynter constituted a <u>serious</u> medical

need that posed a substantial risk of harm in plaintiff's particular circumstances.  As his testimony and the medical records establish, he did not suffer "a life-long handicap or permanent loss" of the type required to constitute a serious medical need for constitutional purposes.  Despite plaintiff's multiple complaints of back pain both before and after the incident with Deputy Poynter, multiple examinations by four doctors and x-rays failed to reveal any serious or long-lasting condition in his back or left thumb. Plaintiff also testified that he is currently being treated for his back pain with aspirin only.  See Hill v. Dekalb Reg'l Youth Detention Ctr., 40 F.3d 1176, 1188 (11th Cir. 1994) (citing Monmouth Cnty. v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987) ("Where the delay [in medical care] results in an inmate's suffering 'a life-long handicap or permanent loss, the medical need is serious.'")); Dickson v. Colman, 569 F.2d 1310, 1311 (5th Cir. 1978) (no serious medical need was demonstrated when plaintiff's high blood pressure presented no "true danger" or "serious threat" to his health).

> To be actionable, the detention officers' conduct must demonstrate subjective awareness of a substantial risk of serious harm and a failure to take reasonable measures to abate this risk.  The "deliberate indifference" standard, however, is not an obligation for government officials to comply with an optimal standard of care.  Rather, it is an obligation not to disregard any substantial health risk about which government officials are actually aware.  Under Gobert v. Caldwell, 463 F.3d 339, 345 n.12 (5th Cir. 2006), "[a] serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required."  Disagreements with diagnostic measures

are insufficient to give rise to a claim of deliberate indifference to medical needs.

Kitchen, 759 F.3d at 482 (footnotes and additional citations and quotations omitted).

As to plaintiff's alleged back, neck and hand conditions, the medical records reveal no serious medical need.  Dr. Inglese saw plaintiff on October 13, 2014, ten days after the incident with Poynter.  Dr. Inglese reviewed Andrew's medical records and stated that Dr. French had evaluated plaintiff "extensively" for lower back pain on October 7, 2014, and the examination was "completely normal,"  as were x-rays taken on August 18, 2014, and physical examinations for Andrew's complaints of left thumb and back pain on July 9, August 18 and September 16, 2014.  Dr. Inglese stated: "Three different physicians have eval[uated] Mr. Andrew since his reported incident w/security [in July 2014].  None found any signif[icant] problem with Mr. A.'s thumb or back. Today, he walks briskly [without] any limp.  He gets into and out of a chair easily."  Dr. Inglese concluded that Andrew had no significant problem that required medical intervention.  Dr. Inglese refused Andrew's sick call request dated November 12, 2014, for back, neck and thumb pain and headaches, stating:  "Four physicians have seen Mr. Andrew for his thumb and back pain complaints.  No further [work-up] indicated." Record Doc. No. 18-1 at pp. 4, 31-32.  The symptoms described by Andrew and the medical records do not reflect that he had a serious medical need during his stay in the St. Tammany Parish Jail.

33

Even assuming, however, but certainly without concluding that plaintiff's conditions presented a serious medical need for constitutional purposes, Andrew has alleged facts, confirmed by his testimony and the medical records, that negate any inference of deliberate indifference by jail officials. His complaint, as amended by his testimony and confirmed by the medical records, shows that he received constitutionally adequate medical care while incarcerated in the St. Tammany Parish Jail.

Andrew testified and his medical records confirm that he was seen by Dr. French only four days after the incident with Deputy Poynter. Dr. French observed that Andrew had "multiple 'dramatic' [complaints] of back pain," but he could not pinpoint a location of the pain and only talked about his history of a fusion. Andrew ambulated, laid down on the exam table and sat up without difficulty. He had full range of motion in his neck and back while the doctor lanced and drained the paronychia on his left thumb, which predated plaintiff's altercation with Poynter. When Dr. French changed his focus to Andrew's lower back, plaintiff's complaints of pain "became extremely exaggerated." Neurological examination was normal. Dr. French noted that plaintiff's low back examination was unchanged since that physician's unremarkable examination on August 28, 2013. Dr. French concluded that Andrew was malingering for medications. Record Doc. No. 18-1 at pp. 33-34. Dr. Inglese refused plaintiff's sick call request for back, neck and thumb pain and headaches dated November 12, 2014, stating: "Four physicians have seen Mr. Andrew for his thumb and back pain complaints. No further [work-up]

34

indicated." Id. at p. 4.  Although Andrew experienced a slight delay in his treatment after the incident with Poynter, his testimony and the medical records confirm that his conditions were monitored and addressed by medical personnel during his stay in St. Tammany Parish Jail, and that those professionals exercised their medical judgment regarding his need, or lack of need, for treatment.

This record does not support an inference that defendants were deliberately indifferent to plaintiff's serious medical needs in the constitutional sense.  See, e.g., Fennell, 393 F. App'x at 157 (Plaintiff's complaint alleged that he informed a prison nurse that he had suffered an injury to his wrist and shoulder and that his shoulder ached, and that the nurse informed him that she saw no sign of injury.  He did not allege any other pain.  Based on these alleged facts, the court "cannot conclude that Nurse Burcham knew or should have known that any delay or failure to provide medical care would have resulted in significant further injury or the unnecessary and wanton infliction of pain repugnant to the conscience of mankind."); Raspberry v. Johnson, 281 F.3d 1279, 2001 WL 1692494, at *1 (5th Cir. 2001) (citing Domino, 239 F.3d at 754) (Plaintiff with injured hand and bruises failed to allege deliberate indifference to serious medical needs when he was examined by medical personnel and the injuries healed on their own.).

Although Andrew has alleged delay in receiving medical care in that he did not receive the treatment he thought was necessary quickly enough, and he has expressed dissatisfaction with the overall speed, quality and initial effectiveness of treatment, none

of his allegations rise to the level of deliberate indifference necessary to establish a constitutional violation cognizable under Section 1983.

> [T]he decision whether to provide additional treatment is a classic example of a matter for <u>medical judgment</u>.  A showing of deliberate indifference requires the prisoner to submit evidence that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.  Deliberate indifference is an extremely high standard to meet.

<u>Gobert</u>, 463 F.3d at 346 (footnotes, citations and internal quotations omitted) (emphasis added).  No such showing has been made on the current record.  In Andrew's case, the decisions of Drs. French and Inglese not to provide him with treatment for alleged conditions that they found were medically unsupported were classic examples of the exercise of "medical judgment," which, even if incorrect, cannot serve as the basis for a finding of deliberate indifference in the constitutional sense.

Mere delay in receiving care is not in and of itself a constitutional violation. <u>Easter v. Powell</u>, 467 F.3d 459, 463 (5th Cir. 2006); <u>Mendoza</u>, 989 F.2d at 195; <u>Wesson v. Oglesby</u>, 910 F.2d 278, 284 (5th Cir. 1990).  Regardless of the length of delay, plaintiff at a minimum must show deliberate indifference to serious medical needs. <u>Wilson</u>, 501 U.S. at 298.  No such showing can be made in this case in light of the continuing medical attention Andrew has received for his back and thumb complaints during his incarceration.

Contentions like Andrew's that amount to a mere disagreement with the speed, quality or extent of medical treatment or even negligence do not give rise to a Section 1983 claim. "[A]lthough inadequate medical treatment may, at a certain point, rise to the level of a constitutional violation, malpractice or negligent care does not." Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999) (citation omitted) (active treatment of prisoner's serious medical condition, which ultimately resulted in death, does not constitute deliberate indifference, even if treatment was negligently administered); see also Rowe v. Norris, 198 F. App'x 579, 581 (8th Cir. 2006) (no constitutional violation when inmate disagreed with physician's choice of medication); Marksberry v. O'Dea, 173 F.3d 855, 1999 WL 98533, at *2 (6th Cir. Jan. 28, 1999) (plaintiff who alleged inadequate treatment for broken hand failed to state constitutional violation, when he was examined by physician and received x-rays and medication); Mendoza, 989 F.2d at 193 (prisoner's disagreement with the type or timing of medical services provided cannot support a Section 1983 claim); Wesson, 910 F.2d at 284 (allegations establishing provision of medical treatment are inconsistent with inference of deliberate indifference); Williams v. Browning, No. V-03-157, 2006 WL 83433, at *1, *3 (S.D. Tex. Jan. 11, 2006) (inmate with diabetes, hypertension, anxiety and chronic knee ailment who alleged that he was unable to obtain his medications timely, but did not establish any substantial harm from the delay, failed to state a claim for deliberate indifference).

Under these circumstances, plaintiff cannot state a cognizable Section 1983 claim that defendants were deliberately indifferent to his serious medical needs.  For all of the foregoing reasons, plaintiff's complaints in this case about his medical care advance a legally frivolous argument and fail to state a claim for relief based upon violation of his constitutional rights under Section 1983.

(C)    Verbal Harassment

Plaintiff testified that he was verbally harassed when Deputy Poynter cursed him and called him "boy," and when Deputies Poynter and Cassidy addressed vulgarities to him.  These allegations of harassment are not cognizable under Section 1983.  Verbal threats by prison staff or other inmates do not rise to the level of a constitutional violation.  Field v. Corr. Corp., 364 F. App'x 927, 930 (5th Cir. 2010) (citing Robertson v. Plano City, 70 F.3d 21, 24 (5th Cir. 1995)); Matthews v. Graham, 235 F.3d 1339, 2000 WL 1672660, at *1 (5th Cir. 2000) (citing McFadden v. Lucas, 713 F.2d 143, 146 (5th Cir. 1983)); see Brand v. Hamilton, No. 3:10CV377 LAC MD, 2010 WL 4973358, at *4-5 (N.D. Fla. Oct. 27, 2010), report & recommendation adopted, 2010 WL 4955400 (N.D. Fla. Dec. 1, 2010) (pretrial detainee's claim that officer verbally threatened him with physical assault not cognizable under section 1983) (citing McFadden, 713 F.2d at 146; Evans v. City of Zebulon, 351 F.3d 485, 495-96 (11th Cir. 2003), vacated, 364 F.3d 1298 (11th Cir. 2004), rehearing en banc granted on other grounds sub nom. Evans v.

Stephens, 407 F.3d 1272 (11th Cir. 2005); Bender v. Brumley, 1 F.3d 271, 274 (5th Cir. 1993)) (additional citations omitted).

"Claims of hurt feelings, humiliation, and other heartfelt, yet objectively trivial indignities, are not of Constitutional moment . . . ." Jackson v. Liberty Cnty., 860 F. Supp. 360, 363 (E.D. Tex. 1994). "Verbal harassment and abusive language, while unprofessional and inexcusable, are simply not sufficient to state a constitutional claim under 42 U.S.C. § 1983." Slagel v. Shell Oil Ref., 811 F. Supp. 378, 382 (C.D. Ill. 1993), aff'd, 23 F.3d 410 (7th Cir. 1994) (quotation and citation omitted).

In this case, plaintiff's allegations of verbal abuse do not rise to the level of a constitutional violation, and these allegations fail to state a claim upon which relief may be granted.

(D)     No Liability for St. Tammany Parish Jail

Andrew has named the St. Tammany Parish Prison as a defendant. This defendant is not a legal entity with the capacity either to sue or to be sued. Section 1983 claims may be asserted only against "persons" as the statute and case law define that term. The St. Tammany Parish Prison is not an entity that can be sued under Section 1983 because it is not a juridical entity under state law capable of being sued and/or because is not a person for purposes of suit under Section 1983, as the statute and case law define that term. Cage v. Kent Cnty. Corr. Facility, 113 F.3d 1234, 1997 WL 225647, at *1 (6th Cir. 1997); Johnson v. LCDC Med. Staff, No. 4:09-cv-13, 2009 WL 1256906, at *2 (E.D.

Tenn. Apr. 29, 2009); <u>Holifield v. Mobile Cnty. Sheriff's Dep't</u>, No. 07-0321-CG-C, 2008 WL 2246961, at *5 (S.D. Ala. May 29, 2008); <u>Cullen v. DuPage Cnty.</u>, No. 99C1296, 1999 WL 1212570, *1 (N.D. Ill. Dec. 14, 1999); <u>Whitley v. Westchester Cnty. Corr. Facility Admin.</u>, No. 97CIV0420(SS), 1997 WL 659100, at *6 (S.D.N.Y. Oct. 22, 1997); <u>Sponsler v. Berks Cnty. Prison</u>, No. 95-1136, 1995 WL 92370, at *1 (E.D. Pa. 1995); <u>Powell v. Cook Cnty. Jail</u>, 814 F. Supp. 757, 758 (N.D. Ill. 1993).

Under these circumstances, all claims against the St. Tammany Parish Prison must be dismissed as legally frivolous.

## RECOMMENDATION

For all of the foregoing reasons, **IT IS RECOMMENDED** that plaintiff's complaint be **DISMISSED WITH PREJUDICE** as legally frivolous and/or for failure to state a claim under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  <u>Douglass v.</u>

United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[8]

New Orleans, Louisiana, this _____14th_____ day of January, 2016.

_____
JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[8]Douglass referred to the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen (14) days.